## C. W. Hahl, et al., v. B. E. Brooks.

1. ABSTRACT—*right to affirm for insufficient.* Held, that the court in this case would have been justified in affirming the judgment because of the insufficiency and inaccuracy of the abstract filed by the appellant.

2. PEREMPTORY INSTRUCTION—*when, properly refused.* A peremptory instruction is properly refused where there is competent evidence in the record which tends to support the cause of action relied upon.

3. ASSIGNMENT OF ERROR—*when, does not lie.* Error cannot be assigned for the failure of the plaintiff to make proof which he attempted to make, but which he was prevented from making because of the objection made by the complaining party and sustained by the court.

4. FRAUD AND DECEIT—*when action for, may be instituted.* Case may be brought for fraud and deceit in falsely representing and selling land as unencumbered without first discharging such encumbrance.

Proceeding commenced before justice of the peace. Error to the Circuit Court of Coles County; the Hon. MORTON W. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed June 28, 1904.

A. C. ANDERSON and CHARLES C. LEE, for plaintiffs in error.

CRAIG & KINGEL, for defendant in error.

MR. JUSTICE GEST delivered the opinion of the court.

Both the record and abstract in this case are wretchedly prepared. The abstract is incorrect, incomplete and of no value to us. We would be entirely justified in affirming the judgment for want of compliance with the rules of this court in that regard. We are loath to do that, and therefore we have endeavored to inform ourselves from the record. We do not say that we will pursue the same course in any case hereafter.

Brooks sued Hahl and Montague in the Coles County Circuit Court for alleged fraud and deceit in a trade between them relative to some lands in Texas. Brooks has lived in Coles county, Illinois, for many years, and has been engaged in farming and in trading in stock. In July, 1900, he went to Texas along with Montague, the latter desiring

to trade to him some Texas lands for some stallions which Brooks owned. At Houston, Texas, Montague introduced Brooks to Hahl. Hahl said he owned 605 acres of land not far from Houston. Montague had already told Brooks about the land. Brooks and Montague and a man whom Hahl sent along, went out to see the land. On their return from the trip, Brooks and Montague went to Hahl's office, and after some talk, Brooks offered his horses and $1,040 for the land, if the title was perfect and no lien on it in any way, the money to be secured on the north 300 acres only, and the horses were to be delivered to Montague, at Charleston, Coles county, Illinois, on Brooks' return to Charleston. Brooks said he must first see Mr. Hayes, who was a lawyer with whom Brooks was acquainted, living in Oklahoma, but who was then in Houston on business of his own. Brooks went out to find Hayes, but did not succeed, and returned to Hahl's office and told him he would have to be assured by some good man that the title was all right and no incumbrance whatever on the land. Hahl referred him to Mr. Moody, a lawyer in Houston, and said that Moody had the abstract and was a good reliable man and a good attorney, versed in abstract business, and that he would tell Brooks the facts. Brooks and Montague thereupon went to Moody's office. Moody told Brooks the land had no incumbrance on it, and that the title to it was all right. Brooks and Montague thereupon returned to Hahl's office. Hahl wrote a deed and handed it to Brooks. It was growing late; they lit a light. Brooks asked Hahl to read it and Hahl read it. Then Brooks asked Montague to read it and Montague read it. Brooks executed and delivered his note for $1,040, and also his bond in $3,000 to deliver the horses to Montague at Charleston. The defendants were to deliver the deed and abstract the next morning to Mr. Hayes to be sent to Brooks, and thereupon Brooks and Montague went to the train and started for Charleston. Mr. Hayes went to Hahl's office the next morning after Brooks left and told Hahl he came at Brooks' request to get the abstract, and Hahl raised

a piece of paper off his desk and said he had not yet finished the deed. " It is not completed yet; " that the abstract was in Moody's office. Hahl told Hayes that Moody had given Brooks an opinion on the abstract. Hahl also told Hayes that Brooks was to get 305 acres clear and the 300 with a mortgage on it.

· Moody held the title to the land in trust for Hahl. Mrs. M. M. Dawson was Hahl's mother-in-law, and there was a mortgage on the land for $2,117, besides interest thereon and the abstract showed it and Hahl knew it. Montague was interested with Hahl in the proceeds of the trade. The deed which was sent to Brooks was executed by Moody as grantor, and acknowledged before defendant Hahl. In the body of the deed next following the statement of the consideration is the following : " The said Brooks also agrees to assume the payment of three certain promissory notes of M. M. Dawson, payable to J. C. League, aggregating twenty-one hundred seventeen dollars and fifty cents, dated November 15th, 1895, given in part purchase money for the above land, deed of trust to secure said notes." It is not questioned that defendants obtained the horses.

The foregoing are the facts as they appear to be shown by the evidence on the part of plaintiff. The defendants offered no evidence, and at the conclusion of the evidence, asked the court to instruct the jury to find for the defendant Hahl, which the court refused. The jury found for the plaintiff in the sum of $2,352.75. A motion for new trial was overruled and judgment entered for that amount and costs. We shall discuss no matters except those which counsel for plaintiffs in error have seen fit to present in their brief and argument.

It is claimed, first, that the instruction to find for the defendants should have been given. This was properly refused for the reason that there was evidence not only tending to show, but clearly showing, a cause of action in the plaintiff; second, that the plaintiff did not rely on the representations that were made and consequently cannot recover. The record shows that the plaintiff did so rely. Third, that the plaintiff cannot recover in such case as this

until he has removed the incumbrance, and counsel cite Horne v. Walton, 117 Ill. 135. That proposition is not the law and that case does not so state. Fourth, that the value of the land must be shown at all events; that it may be much less than the incumbrance. The plaintiff undertook to prove the value of the land, the defendant objected and the court sustained the objection. The defendant cannot now complain on that score. Fifth, that " the injury in this case arose solely from the carelessness or fraud of Moody, and if Brooks has any cause of action it is against him and not against Hahl. The deed was made by Moody." The evidence shows that Moody was the mere instrument of Hahl; that Moody held the land in trust for Hahl; that Hahl directed Brooks to go to Moody; told him that Moody was a good lawyer and a good reliable man and that from him he would get the facts. What Moody said to Brooks was, as matter of law, a statement by Hahl to Brooks; Moody was the mere mouthpiece of Hahl. Sixth, that " Brooks wants the court to infer that the deed was changed after it was delivered to him in Texas." The deed was not delivered to Brooks at the time of the transaction in Hahl's office. Hahl then wrote some paper which is called a deed and he and Montague read it to Brooks. Brooks and Montague both say that the paper which was read to Brooks did not contain the provision about the Dawson mortgage. The court might well infer that the paper read to Brooks was either not read correctly or was afterwards changed by adding that clause or that an entirely new deed was written and executed by Moody at Hahl's direction. The deed offered in evidence is not the deed Brooks bargained for and insisted upon at all times and Hahl and Moody both well knew that fact at the time. When Hayes called on Hahl the next day to get the abstract Hahl told him he had not finished the deed.

We have noticed all the points that have been brought to our attention by counsel. The verdict is abundantly sustained by the evidence, the judgment is just and will be affirmed and the plaintiff will be awarded his costs for the additional abstract. *Affirmed.*